UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CRYSTAL LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:09-CV-365-HAI |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ALLSTATE INSURANCE COMPANY | ) | |
| and RICHARD READ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon a motion by Defendants, Allstate Insurance Company and Richard Read, for summary judgment. (D.E. 21). Plaintiff Crystal Lewis, pro se, has filed a response to the motion for summary judgment (D.E. 30) and Defendants have filed a reply (D.E. 32). For the reasons that follow, the motion for summary judgment is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On February 11, 2008, Plaintiff applied for homeowner's insurance with Allstate to cover her single-wide trailer located in Pulaski County, Kentucky. (D.E. 22 at 7:9-13; 73:18-74:21). Her application was accepted and a policy of insurance became effective that same date. (*Id.* at 110:23-111:1). Approximately seven months later, on September 28, 2008, Plaintiff's trailer and all of its contents were completely destroyed by fire. (D.E. 21-1 ¶ 3). Plaintiff reported the loss to Allstate on October 2, 2008. (*Id.* ¶ 4).

Allstate subsequently investigated the loss (*id.* ¶ 3), conducted Plaintiff's examination under oath (*id.* ¶ 9), and instructed Plaintiff to complete a personal property inventory (*id.* ¶ 12). In a letter dated May 5, 2009, Allstate advised Plaintiff of its decision to deny her claim on grounds that Plaintiff "concealed and misrepresented material facts and circumstances relative to the fire loss." (D.E. 21-9 at 1).

Plaintiff filed suit against Defendants in the Pulaski Circuit Court alleging breach of contract, common law and statutory bad faith, and defamation. (D.E. 1-2). The action was removed to this Court. (D.E. 1). Arguing that there is a lack of a genuine issue of material fact as to each of the claims asserted by Plaintiff, Defendants have now moved for summary judgment. (D.E. 21).

## II. DISCUSSION

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### A. Common Law and Statutory Bad Faith

In her complaint, Plaintiff has asserted three different theories of bad faith—the Kentucky Unfair Claims Settlement Practices Act, *see* KRS 304.12-230, the Kentucky Consumer Protection Act, *see* KRS 367.170, and common law bad faith, *see Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989). Although three different theories have been asserted, "[a] single test under Kentucky law exists for the merits of bad-faith claims, whether brought by a first- or third-party claimant or brought under common law or statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). Thus, in order to state a claim for bad faith under Kentucky law, the insured must prove three elements: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 847 (Ky. 1986) (Leibson, J., dissenting) (adopted by incorporation in *Curry*, 784 S.W.2d at 178). Simply put, "[a]n

3

insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quotation and internal markings omitted).

Here, Plaintiff's insurance policy had a concealment and fraud provision which relieved Allstate of the obligation to "cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (D.E. 21-9 at 1). Shortly after the fire, Allstate representative David Gray interviewed Plaintiff to determine whether there were any circumstances surrounding the loss that would indicate the presence of concealment or fraud. (D.E. 21-1 ¶ 4). Gray determined that such indicators were present with respect to Plaintiff's claim. (*Id.*). In particular, Gray discovered that the policy was less than one year old at the time of the loss, no one was home at the time of the loss, and there was no report of the fire to authorities until the following morning. (*Id.*). An inspection of the remains of the trailer by Derek Owen, another Allstate employee, showed few remains of personal property in the home at the time of the fire. (*Id.*). The presence of these indicators caused Allstate to refer the investigation of the loss to Defendant Richard Read, an employee in Allstate's Special Investigations Unit. (*Id.* ¶¶ 2, 4).

After Read was assigned to the case, he took Plaintiff's recorded statement and concluded that Plaintiff may have had a financial motive to commit fraud. (*Id.* ¶ 6). He learned that at the time of the fire, Plaintiff had a monthly income of $1,300 and that her child support payments from her ex-husband had been recently reduced by $300 per month. (*Id.*). During its investigation, Allstate also determined that, in the month

preceding the fire, Plaintiff had credit card debt and a "fair share" of overdraft charges in her checking account. (D.E. 21-14 ¶ 9).

Significantly, on November 20, 2008, the Somerset Fire Department received an anonymous call in which the caller accused Plaintiff of setting her own home ablaze. (D.E. 21-3 at 1). The caller, who identified Plaintiff by name and accurately stated the location of Plaintiff's residence, indicated that Plaintiff had stated that she was happy her home burned so that she could get the insurance money. (*Id.*). The caller also stated that Plaintiff's personal property was located at her son's father's residence, her mother's residence, and in storage. (*Id.*). This information was conveyed to an Allstate representative on December 2, 2008. (D.E. 21-1 ¶ 8). On December 19, 2008, a handwritten, anonymous letter was sent to the Allstate Hays Insurance Agency by facsimile. (*Id.* ¶ 9; D.E. 21-4). The letter likewise accused Plaintiff of burning her home "for the ins[urance] money." (D.E. 21-4). It also stated that "you need to look in her storage building that she has rented at Burnside out on Highway 90 . . . . She has all her good things in the unit and had junk put in the trailer that burned." (*Id.*).

During her December 29, 2008 examination under oath, Plaintiff, when asked, acknowledged that she, along with her sister, rented a storage unit at Burnside. (D.E. 22 at 131:4-11). The storage unit was rented by Plaintiff on a month-to-month basis beginning on March 29, 2006. (D.E. 21-2 at 5-6). A unit activity log shows that, in the year preceding the fire, the storage unit was accessed approximately two to three times per month, and in the month of the fire, it was accessed on September 4, 8, 19, and 23, 2008. (*Id.* at 1-4). Immediately following her examination under oath, Plaintiff allowed

5

Amanda Hill, an attorney retained by Allstate to conduct the examination under oath, and Gary Noland, a private investigator for Allstate, to enter the storage unit and observe its contents. (D.E. 21-14 ¶ 6). In the storage unit, Hill and Noland discovered what they believed to be items that Plaintiff had listed on her personal property inventory form. (*Id.*). According to Amanda Hill's affidavit:

> Immediately following the Examination Under Oath, Ms. Lewis allowed investigator Noland and I entry into her storage building, which was located in a neighboring town. The storage unit was so full of personal property that it was nearly impossible to ascertain all of its contents. It was observed, however, that Ms. Lewis had a full size refrigerator, stove/oven unit, and a washer and dryer in the storage building. These are all items that are listed on her personal property contents sheet submitted to Allstate for payment under the claim. It was my opinion that Ms. Lewis' explanation at that time as to why she had these large appliances in the storage unit was not plausible. She initially testified in the Examination Under Oath that her ex-husband, a drug addict, had taken the appliances and furniture out of the mobile home and sold them, leaving the home completely empty. She then explained that her former mother-in-law then gave her a stove, refrigerator and microwave and the insured purchased her own washer and dryer approximately two years ago. She testified further that she never recovered any of the items her ex-husband had taken. When questioned during the concluding portion of the Exanimation Under Oath about the contents in the storage building, Ms. Lewis admitted to having those large appliances in the storage building. However, she stated that her ex-husband stole their first set of appliances and that she received a second set after the couple reconciled. She then stated her mother-in-law gave her another set of kitchen appliances which she kept, but placed the other set back inside the storage unit without anyone's knowledge.

(*Id.* ¶ 6). Furthermore, Hill's affidavit states that "[t]he storage building contained several boxes of photo albums, photographs, CDs storing digital photographs, school projects, scrapbooks, important paperwork such as a birth certificate, lawsuit papers, e-mails, etc., and other sentimental memorabilia. At the entrance to the unit she had boxes and bags of food. She also had furniture in the storage unit." (*Id.* ¶ 7). Noland's

6

affidavit provides a similar account of the contents of the storage unit. (D.E. 21-10). Hill "recommended to Allstate that Ms. Lewis' fire loss claim be denied on the basis of her concealment and misrepresentation of material facts and circumstances . . . ." (D.E. 21-14 ¶ 10). Read also concluded that Plaintiff concealed or misrepresented the personal belongings contained in Plaintiff's trailer at the time of the loss. In particular, Read concluded that the following nine items were also items that were discovered in the storage unit: Sony CD stereo shelf system, 20" TV, twin mattress and box spring, microfiber suede couch and loveseat, wood cherry coffee table and two end tables, washer and dryer, dehumidifier, photos and albums, and videos of kids." (D.E. 21-1 ¶ 12). Thus, Read denied Plaintiff's insurance claim on May 5, 2009.

Based upon these facts, which have been supported through citations to depositions and affidavits, Defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. Allstate conducted a timely investigation, discovered facts which supported the need for further investigation, interviewed witnesses, deposed Plaintiff, hired experts, and received a coverage recommendation from an attorney. Furthermore, the record supports Defendants' position that they fairly evaluated the evidence and honestly concluded that Plaintiff concealed and misrepresented facts related to her loss. Thus, Defendants have shown that they *had* a "reasonable basis in law or fact for denying the claim," *Fed. Kemper*, 711 S.W.2d at 847, and that they were "entitled to challenge [the] claim and litigate it," *Wittmer*, 864 S.W.2d at 890.

As Defendants have met their initial summary judgment burden, Plaintiff was required to produce specific facts demonstrating a genuine issue of fact for trial. *Anderson*, 477 U .S. at 247-48. Rule 56 requires that Plaintiff do so either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(a)-(b). Plaintiff has done neither. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for bad faith.

**B. Defamation**

Likewise, Defendants are entitled to summary judgment on Plaintiff's claim for defamation. Under Kentucky law, a claim for defamation has four elements: "1. defamatory language, 2. about the plaintiff, 3. which is published, and 4. which causes injury to reputation." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). According to Plaintiff's complaint, the basis for her defamation claim is a letter authored by Read on behalf of Allstate which states that "you have concealed and misrepresented material facts and circumstances relative to the fire loss." (D.E. 1-2 ¶ 48; D.E. 21-9). According to the allegations in the complaint, the letter essentially accused Plaintiff of being "a cheat and a fraud." (D.E. 1-2 ¶ 49). Furthermore, Plaintiff "*believes* this letter was published to third parties." (*Id.* ¶ 50 (emphasis added)). However, in

8

response to Defendant's motion for summary judgment demonstrating the absence of evidence of publication, Plaintiff has simply not rebutted that showing. (*See* D.E. 30). Having failed in any way to support her allegation that the claim-denial letter was published—an essential element for a claim of defamation—Plaintiff's claim fails and Defendants are entitled to summary judgment.

### C. Breach of Contract

Plaintiff has also asserted a claim for breach of contract. She argues that Allstate breached her insurance policy by denying her claim. Defendants, on the other hand, take the position that Plaintiff's policy was void as a matter of law due to her concealment or misrepresentation. Kentucky law provides that "the rights of parties to an insurance policy are to be determined exclusively by the terms of the policy, unless contrary to existing law or public policy." *Interstate Ins. Group v. Musgrove*, 11 F. App'x 426, 427-28 (6th Cir. 2001). Thus, where the words of an insurance policy are clear and unambiguous, those terms "should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). Here, there is no suggestion that the terms of Plaintiff's insurance policy with Allstate are contrary to Kentucky law; the Court will therefore enforce the agreement as written. Although Defendants did not file the applicable insurance policy into the record, the parties do not appear to dispute that it contains the following provision:

> **Concealment or Fraud**
>
> This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all

premiums paid will be returned to you since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

(D.E. 21-9 at 1 (boldface typing in original)).

Based upon Allstate's findings during its investigation, including the anonymous tip, Plaintiff's financial condition at the time of the loss, Plaintiff's visits to the storage unit in the weeks preceding the fire, and the content of Plaintiff's storage unit, Defendants insist that Plaintiff's concealment and misrepresentation are clear. (D.E. 21 at 8). For example, Defendants "believe" that the nine items identified by Read in his affidavit were the same nine items, of approximately 162, that were listed on Plaintiff's personal property inventory. (D.E. 21-1 ¶ 14). Although Defendants' conclusion is based upon a reasoned assessment of the facts surrounding the loss, it required an assessment of Plaintiff's credibility and an assessment of the circumstantial evidence surrounding the loss. For example, Defendants' conclusion is based upon their assessment of Plaintiff's financial condition at the time of the loss. (*Id.* ¶ 13 (noting Plaintiff's "financial wherewithal at the time of the loss")). It is also based upon an assessment of the nature of the items found in the storage unit. (D.E. 21-10 ¶ 6 (an Allstate investigator noting his "impression" that "everything of importance to Ms. Lewis was stored in the unit.")). Furthermore, it is based upon an assessment of Plaintiff's believability. (D.E. 21-14 ¶ 6 (Allstate's attorney noting her "opinion" that Plaintiff's explanation of the items in the store unit "was not plausible.")).

Although Defendants were entitled to make these inferences and credibility determinations in deciding whether to approve or deny Plaintiff's claim without acting in bad faith, the Court is not permitted to do so when faced with a motion for summary judgment. *See, e.g.*, *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011) ("'[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.'") (quoting *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010)); *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) ("A court considering a summary judgment motion considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party."). Based upon the evidence presented by Defendants, the Court cannot say that fraud is the *only* reasonable explanation for the circumstances. In other words, this matter, which inherently requires a fact-bound assessment of the circumstantial evidence and Plaintiff's credibility, must be left to a jury. Therefore, Defendants are not entitled to summary judgment on Plaintiff's claim for breach of contract.

### D. Punitive Damages

Although Plaintiff's claim for breach of contract survives summary judgment, Defendants argue that there is insufficient evidence to award punitive damages with respect to such a claim. The Court agrees. The rule in Kentucky is that punitive damages "are not recoverable for mere breach of contract" unless "the breach included separately tortious conduct . . . ." *Faulkner Drilling Co. v. Gross*, 943 S.W.2d 634, 638 (Ky. Ct. App. 1997). The Court concluded above that Defendants' breach of contract—if there

was one—was not accompanied by "separately tortious conduct." Accordingly, summary judgment on Plaintiff's punitive damages claim is appropriate.

### E. Individual Claims against Defendant Richard Read

Furthermore, Defendant Richard Read is entitled to summary judgment on Plaintiff's claim for breach of contract—the only claim remaining against him. There is no dispute that Plaintiff and Allstate were the only parties to the insurance contract. Furthermore, Plaintiff, in her complaint, alleged that Read "was at all times an employee of Allstate" and that "[a]ll actions taken by [] Read against Allstate were done in the course and scope of his employment." (D.E. 1-2 ¶¶ 66-67). Yet the rule in Kentucky is that "an agent of a disclosed principal is not liable for his own authorized acts or for dealings between a third person and the principal." *Spees v. Ky. Legal Aid*, 274 S.W.3d 447, 448 (Ky. 2009) (citing *Young v. Vista Homes*, 243 S.W.3d 352, 364 (Ky. Ct. App. 2007)). With respect to his actions in investigating and denying Plaintiff's claim, the record conclusively establishes that Read was acting on behalf of Allstate and that he was authorized to act as he did. (*See* D.E. 21-1 ¶ 2 (indicating that Read is employed by Allstate in its Special Investigations Unit); *id.* ¶ 3 (indicating that Read was assigned by Allstate to investigate and evaluate Plaintiff's loss); *id.* ¶ 15 (indicating that Read denied Plaintiff's claim on behalf of Allstate)). Accordingly, if the insurance policy was breached, only Allstate would be liable for that breach.

### III. CONCLUSION

Accordingly, the motion by Defendants, Allstate Insurance Company and Richard Read, for summary judgment (D.E. 21) is **GRANTED in part** and **DENIED in part**.

With respect to Defendant Richard Read, the motion is **GRANTED** in its entirety. With respect to Defendant Allstate Insurance Company, it is **GRANTED** with respect to Plaintiff's claims for common law and statutory bad faith, defamation, and punitive damages, but it is **DENIED** with respect to Plaintiff's claim for breach of contract. Upon review of the record, it appears that the only claim that remains pending in this action is Plaintiff's claim for breach of contract against Defendant Allstate Insurance Company, which the Court will schedule for trial by separate order.

This the 18th day of May, 2011.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge